Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/21/2023 09:07 AM CDT

- 771 -

**Nebraska Supreme Court Advance Sheets**
**314 Nebraska Reports**
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

**Jamar L. Haynes, appellant, v.
Nebraska Department of
Correctional Services, appellee.**
___ N.W.2d ___

Filed July 21, 2023.    No. S-22-754.

1. **Appeal and Error.** Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.

2. ____. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

3. **Jurisdiction: Statutes.** Subject matter jurisdiction and regulatory interpretation present questions of law.

4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

5. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

6. **Jurisdiction: Affidavits: Fees: Appeal and Error.** A poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal, and an in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and a proper affidavit of poverty.

7. **Jurisdiction: Affidavits: Appeal and Error.** Although jurisdiction is vested in an appellate court upon timely filing of a notice of appeal and an affidavit of poverty, some duties are still required of the lower court. Under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016), the lower court retains jurisdiction to determine the validity of the affidavit.

8. **Administrative Law: Statutes.** Properly adopted and filed agency regulations have the effect of statutory law.

- 772 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

9. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Evidence: Words and Phrases.** Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Jamar L. Haynes, pro se.

Michael T. Hilgers, Attorney General, and Timothy M. Young for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Funke, J.

## INTRODUCTION

An inmate, sanctioned for drug use while in prison, filed a petition seeking judicial review of the disciplinary sanction. Upon review, the district court upheld the decision of the Nebraska Department of Correctional Services Appeals Board (Appeals Board), which upheld the decision of the Institutional Disciplinary Committee (IDC). The inmate appeals. Having elected to review for plain error and finding none, we affirm.

## BACKGROUND

Jamar L. Haynes is an inmate incarcerated under the care and custody of the Nebraska Department of Correctional Services (NDCS). At all relevant times, Haynes occupied cell 2C14, along with his cellmate.

On February 27, 2022, Cpl. Christine Stulken observed that the cell-door window of cell 2C14 was covered and smelled a "burning smell" coming from inside the cell. Stulken ordered Haynes and Haynes' cellmate to remove the covering. Once

- 773 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

the covering was removed, Stulken observed potential drug paraphernalia on the cell's table. Stulken reported the incident, and Cpl. Seth Fosket entered and searched cell 2C14.

Fosket observed Haynes and his cellmate seated at the table. Fosket also observed materials that, based on his experience as a corrections officer, suggested drug use. The materials included "pieces of wire unsheathed and bent into shapes that are used for lighting smoking papers," toilet paper ripped into small pieces, and multiple batteries in cups on the table. Both Haynes and his cellmate had red eyes, were lethargic, and were slow to respond to questions. Both slurred their speech. Haynes had orange marks on his left-hand pointer finger and thumb. Based on his observations and his experience as a corrections officer, Fosket concluded that both Haynes and his cellmate were impaired. Fosket described his observations in a misconduct report.

As relevant to this appeal, Haynes was issued a misconduct charge for "Drug or Intoxicant Abuse" in violation of an NDCS rule, which we will refer to as "Rule 5-1-H."[1] On March 8, 2022, Haynes submitted a written request to be drug tested. Haynes was never drug tested in connection with the incident or misconduct charge.

## PROCEDURAL HISTORY

On March 18, 2022, the IDC held a hearing on the misconduct charge. The IDC considered Fosket's misconduct report, Stulken's incident report, and Haynes' request that he be drug tested. Haynes testified that only his cellmate was impaired on February 27 and submitted a statement from his cellmate claiming full responsibility for the misconduct and contraband items. Haynes also argued that he appeared "lethargic" on February 27 because he had been asleep and was woken up. Fosket testified that in his experience as a corrections officer, both Haynes and his cellmate were impaired on February 27.

---

[1] See 68 Neb. Admin. Code, ch. 5, § 005 I[H] (2023).

- 774 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

The IDC found that Haynes had violated Rule 5-1-H on the following basis: "[Haynes] was under the influence due to [Fosket's] correctional experience because inmate was lethargic, slow to respond to questions, slurred speech, had red eyes, and orange marks on his left-hand pointer finger and thumb" as stated in the misconduct report prepared by Fosket. The IDC imposed sanctions of 30 days' room restriction and 30 days' loss of good time credit.

Haynes appealed to the Appeals Board. The Appeals Board upheld the IDC's decision, explaining that drug testing was not required for the offense, substantial evidence had been presented to the IDC proving Haynes had violated Rule 5-1-H, and procedural due process had been afforded.

Haynes subsequently filed, in the district court for Lancaster County, Nebraska, a petition for judicial review of the Appeals Board's decision pursuant to the Administrative Procedure Act. Haynes argued that the Appeals Board had erred in upholding the IDC's decision to deny his request for drug testing. Haynes also argued that Fosket's statements as to Haynes' state of impairment were inadmissible and that, absent those statements, the IDC lacked substantial evidence to support a finding that Haynes violated Rule 5-1-H.

On September 22, 2022, the district court entered an order concluding that neither of Haynes' arguments had merit and that the Appeals Board had not erred in upholding the IDC's decision. Specifically, the district court concluded that "68 Neb. Admin. Code, ch. 9, § 009.01," now renumbered as 68 Neb. Admin. Code, ch. 6, § 008.01 (2023), did not entitle Haynes to a drug test.[2] The court also concluded that the IDC's finding that Haynes had violated Rule 5-1-H was supported by substantial evidence.

## Appellate Jurisdiction

On October 6, 2022, Haynes filed a notice of appeal of the court's September 22 order, as well as a motion and

---

[2] See, also, Neb. Rev. Stat. § 83-4,114.02 (Reissue 2014).

- 775 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

affidavit for leave to proceed in forma pauperis. On October 18, the court entered an order deferring ruling on Haynes' motion. The court explained that Haynes' affidavit and application were not accompanied by a certified copy of his inmate account. The court warned that if Haynes did not file the document within 30 days, his motion to proceed in forma pauperis would be denied and the case would be dismissed. The record does not show how this matter was resolved.

## ASSIGNMENTS OF ERROR

Haynes' brief contains no designated assignments of error section. Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2022) requires an appellant's brief to include, under the appropriate heading, "[a] separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The rule specifies that "[e]ach assignment of error shall be separately numbered and paragraphed." The rule cautions that "[c]onsideration of the case will be limited to errors assigned and discussed in the brief," but that "[t]he court may, at its option, notice a plain error not assigned."

[1] Haynes' brief contains headings in the argument section which allege error by the trial court, but argument headings are insufficient.[3] Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.[4] Here, we will review for plain error.

## STANDARD OF REVIEW

[2] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result

---

[3] Cf. *County of Lancaster v. County of Custer*, 313 Neb. 622, 985 N.W.2d 612 (2023).

[4] *Id.*

- 776 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

in damage to the integrity, reputation, or fairness of the judicial process.[5]

[3,4] Subject matter jurisdiction and regulatory interpretation present questions of law.[6] An appellate court independently reviews questions of law decided by a lower court.[7]

## ANALYSIS

### Jurisdiction

[5] NDCS argues that appellate jurisdiction is absent or uncertain. It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[8] Because of that duty, we consider NDCS' arguments related to jurisdiction, even though we are otherwise limited to a review for plain error.

[6] Neb. Rev. Stat. § 84-918 (Reissue 2014) provides that an aggrieved party may secure a review of any judgment rendered or final order made by the district court under the Administrative Procedure Act by appeal to the Nebraska Court of Appeals and that the appeal shall be taken in the manner provided by law for appeals in civil cases. Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2022) generally provides that a civil appeal may be taken by filing a notice of appeal and depositing the required docket fee with the clerk of the district court. We have noted that a poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal and that an in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and a proper affidavit of poverty.[9]

---

[5] *Id.*

[6] See *id.* and *Leon V. v. Nebraska Dept. of Health & Human Servs.*, 302 Neb. 81, 921 N.W.2d 584 (2019).

[7] *County of Lancaster, supra* note 3.

[8] *Id.*

[9] See, e.g., *State v. Carter*, 292 Neb. 16, 870 N.W.2d 641 (2015), and *State v. Ruffin*, 280 Neb. 611, 789 N.W.2d 19 (2010).

- 777 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

This is true even where the record contains no order from the district court granting the appellant's request to proceed in forma pauperis.[10]

In *In re Interest of N.L.B.*,[11] the appellant had filed both a notice of appeal and a poverty affidavit within the time prescribed by statute. However, the trial court did not enter an order authorizing the appellant to proceed in forma pauperis within 30 days.[12] The appellee claimed that in addition to filing a poverty affidavit, the party appealing must also obtain authorization from the trial court to proceed in forma pauperis.[13] We rejected this argument, explaining:

> [A]lthough it may be customary and a mark of prudence for an appellant to obtain authorization of the trial court in order to forestall any finding of a lack of good faith and possible dismissal of the appeal, contrary to appellee's assertion, there is no statutory requirement that such authorization be obtained in order to make the affidavit effective.[14]

Accordingly, we held, based on the statute in effect at the time, that this court obtained jurisdiction when a party filed a notice of appeal and an affidavit of poverty.[15]

In *State v. Jones*,[16] the appellee argued that this court lacked jurisdiction over an appeal. The appellant had timely filed a notice of appeal and a proper in forma pauperis application and affidavit.[17] However, the record contained no order

---

[10] See *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002). See, also, *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990).

[11] *In re Interest of N.L.B., supra* note 10.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 282, 450 N.W.2d at 679.

[15] *Id.*

[16] *Jones, supra* note 10.

[17] *Id.*

- 778 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

granting or denying the appellant's in forma pauperis request.[18] Referencing our analysis in *In re Interest of N.L.B.*, we concluded that this court had jurisdiction over the appeal.[19]

Like in *Jones*, the record here includes no order granting or denying Haynes' in forma pauperis request. However, the record does include Haynes' notice of appeal and an affidavit of poverty filed October 6, 2022. For this reason, we conclude that appellate jurisdiction vested over Haynes' appeal on October 6, 2022.

[7] Although jurisdiction is vested in an appellate court upon timely filing of a notice of appeal and an affidavit of poverty, some duties are still required of the lower court.[20] Under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016), the lower court retains jurisdiction to determine the validity of the affidavit.[21] Section 25-2301.02(1) provides that an application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application (a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious. Section 25-2301.02(1) also provides that the objection to the application shall be made within 30 days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent. Such an objection may be made by the court on its own motion or on the motion of any interested person under § 25-2301.02(1).

On October 18, 2022, the district court entered its order deferring ruling on Haynes' in forma pauperis application due to the lack of a certified copy of his inmate account. The court gave Haynes 30 days to submit the missing information

---

[18] *Id.*

[19] *Id.*

[20] See, *In re Interest of Noelle F. & Sarah F.*, 249 Neb. 628, 544 N.W.2d 509 (1996); *Young v. Zobrist*, No. A-20-796, 2021 WL 2201595 (Neb. App. June 1, 2021) (selected for posting to court website).

[21] See *id*.

- 779 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

or his motion to proceed in forma pauperis would be denied and the case would be dismissed. Though the district court had the statutory authority to grant or deny Haynes' in forma pauperis application, we are unaware of any authority the district court had to dismiss Haynes' appeal. With that being said, by not ruling on the application, the district court functionally abandoned its statutory duty to determine the validity of Haynes' affidavit. Such abandonment does not divest this court of jurisdiction.[22] Accordingly, Haynes' timely filed notice of appeal and application and affidavit to proceed in forma pauperis were sufficient to perfect his appeal.[23]

## Plain Error Review

Having concluded that this court has jurisdiction over Haynes' appeal, we proceed to the merits. The district court concluded that "68 Neb. Admin. Code, ch. 9, § 009.01," now renumbered as 68 Neb. Admin. Code, ch. 6, § 008.01 (2023), did not entitle Haynes to a drug test. Section 008.01 provides:

> Before an inmate can be disciplined for a drug or alcohol violation, the inmate may request and NDCS shall provide independent confirmation testing of positive results of urinalysis testing. If the confirmation test is positive, the inmate may be required to pay the cost of the confirmation test.

[8,9] Properly adopted and filed agency regulations have the effect of statutory law.[24] Statutory language is to be given its plain and ordinary meaning, and we will not resort to interpretation to ascertain the meaning of words that are plain, direct, and unambiguous.[25]

---

[22] See *Jones, supra* note 10.

[23] But see *In re Interest of Noelle F. & Sarah F., supra* note 20, and *Young, supra* note 20.

[24] *Leon V., supra* note 6.

[25] *Id.*

- 780 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

The regulation at issue, § 008.01, provides inmates the right to "independent confirmation testing of positive results of urinalysis testing." The only interpretation consistent with the plain and ordinary meanings of the regulation's terms is that which the district court provided: The regulation provides inmates with the right to a subsequent, independent drug test where an initial urinalysis test yields positive results and those results form, wholly or partially, the basis for a drug or alcohol violation. Haynes was never drug tested. Accordingly, the district court did not commit plain error in concluding that Haynes was not entitled to a drug test under the circumstances.

[10] The court also concluded that the IDC's finding that Haynes had violated Rule 5-1-H was supported by substantial evidence. Neb. Rev. Stat. § 83-4,122(9) (Reissue 2014) provides that in prison disciplinary cases which may involve the imposition of disciplinary isolation or the loss of good time credit, the standard of proof to sustain the charge shall be substantial evidence. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."[26] To comport with due process requirements, the IDC's findings must be supported by evidence that has some "'indicia of reliability.'"[27]

The IDC and the Appeals Board both found that there was sufficient evidence that Haynes was under the influence of a drug or intoxicant in violation of prison rules. Haynes testified that his cellmate was "the one doing all the smoking and everything else" but that he, personally, was not. Haynes

---

[26] *Ponce v. Nebraska Dept. of Corr. Servs.*, 263 Neb. 609, 612, 641 N.W.2d 375, 377 (2002) (internal quotation marks omitted).

[27] See, e.g., *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 608, 514 N.W.2d 310, 314 (1994). See, also, *Baxter v. Nebraska Dept. of Corr. Servs.*, 11 Neb. App. 842, 663 N.W.2d 136 (2003).

- 781 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
HAYNES v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 314 Neb. 771

explained that he appeared "lethargic" because he was sleeping and had been woken up. Fosket reported that both Haynes and his cellmate were under the influence and that there was drug paraphernalia on the cell's table, where Haynes and his cellmate were seated. Fosket also reported that Haynes appeared lethargic, responded to questions slowly, and had orange marks on his left-hand pointer finger and thumb. Fosket concluded that all of the above were signs of drug use.

Haynes argues that Fosket's observations were unreliable. However, nothing in the record calls the reliability of Fosket's observations into question.[28] As NDCS emphasizes, Fosket was present and able to observe both the drug paraphernalia in Haynes' cell and Haynes' behaviors and appearance. In addition, other evidence in the record corroborates certain details of Fosket's report and testimony.

The evidence was sufficient to uphold the IDC's finding that Haynes violated Rule 5-1-H, and the district court did not commit plain error in holding the same.

CONCLUSION

The district court did not commit plain error. Accordingly, we affirm.

AFFIRMED.

FREUDENBERG, J., not participating.

---

[28] Contrast with *Lynch, supra* note 27.